297 So.2d 405

**Milton S. CHRISTIAN**

v.

**CITY OF TUSCALOOSA.**

**6 Div. 445.**

Court of Criminal Appeals of Alabama.

May 7, 1974.

82

Glenn N. Baxter and J. Wagner Finnell, Tuscaloosa, for the City of Tuscaloosa.

LEIGH M. CLARK, Supernumerary Circuit Judge.

Appellant was found guilty by a jury of violating a city ordinance adopting for application in the City of Tuscaloosa and in

Ralph C. Burroughs, Tuscaloosa, for appellant.

its police jurisdiction all substantive misdemeanor laws of Alabama. The particular offense is charged in the complaint substantially in the language of Title 14, § 90, Code of Alabama, which makes it a misdemeanor for a person to have "in his possession any implement or instrument designed and intended by him to aid in the commission of burglary or larceny."

The jury assessed a fine of $125 and the court sentenced him to "sixty (60) days as additional punishment."

The assignments of error relied upon by appellant relate to action of the trial court in two particulars only:

(1) Proceeding with the trial of defendant, who in appellant's brief is claimed to be an indigent, without providing counsel and, according to appellant's claim, in the absence of an intelligent waiver by appellant of his right to counsel, and

(2) Admitting evidence to the effect that appellant was a drug addict and on some occasions, prior to the offense charged, had been observed using and under the influence of drugs.

After previous consideration by us of the briefs of the respective parties, we remanded to the trial court to ascertain if appellant was indigent at trial and, if so, whether prior to trial he had waived his right to counsel within the requirements set forth in Argersinger v. Hamlin, 407 U. S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530. We now have before us the evidence presented on the hearing after said remandment, and the findings of the trial court, including a specific finding that defendant did waive counsel "knowingly and with an intelligent understanding of the consequences." With that finding we fully agree. To the credit of appellant, it should be said, we think, that he forthrightly stated that he was fully informed by the trial court of his right to counsel without cost to him, that he was warned of the danger of trying his case without counsel and was advised of his likely need for counsel, but that, with full appreciation of the consequences, he voluntarily and understandingly chose to try the case without counsel. In the light of this information, the assignments of error relating to the court's proceeding with the trial without appointing counsel for defendant are not well taken.

There is little, if any, dispute as to the facts developed by the evidence in the case. On the night of January 4, 1972, Officers Allen E. Fondren and A. W. Clark, Jr., of the Tuscaloosa Police Department were patrolling the Cottondale area of Tuscaloosa, Alabama, when they observed an automobile parked by a gasoline supply and service station, which was closed. The bright headlights were on, shining out into the highway traveled by the officers. The officers continued two or three blocks beyond the filling station, turned around and drove back to it. They testified that as they approached the station and the automobile, defendant was standing by the door of the automobile but promptly left at a fast walk and entered a rest room of the station. The officers further testified that they saw broken glass on the ground and inside the service station and a broken window glass of the station. Officer Clark asked defendant to come out of the rest room. When appellant complied, the officers noticed a flashlight and a screwdriver in the hands of appellant. Officer Clark testified that he observed defendant while in the rest room standing in a corner thereof approximately five feet from the commode with a flashlight in his hand. There were three vending machines inside the service station.

A search of appellant produced another screwdriver in his right back pants pocket and some prescription drugs and two syringes in one of his front pockets. A search of the automobile produced another screwdriver and a rubber hammer. At the police station, after defendant was arrested for possession of burglary tools and while

he was being booked and his possessions inventoried, officers found three instruments described as "picks." The picks were in defendant's billfold. Defendant had in his possession $4.69 in quarters, nickels, dimes and pennies.

There was testimony that there had been "a rash of burglaries of Coke machines and vending machines" in the particular area as well as in other areas.

There was testimony that "picks" such as were found in the possession of defendant were commonly used in the commission of burglaries, and that a burglar might use either a pick or a screwdriver in order to gain entrance to a vending machine.

Defendant's testimony was to the effect that he had missed the turn-off leading to his son's residence and was turning around at the service station, that he noticed that the men's rest room was open and stopped to relieve his bladder, taking his flashlight with him for illumination. He denied having a screwdriver in his hand and stated that the one in his pocket was for the purpose of opening a broken door on his automobile. He said that the other tools were in his automobile because he had recently traded cars and removed the tools from the car he traded and put them in the car he then possessed. He testified that he used the "picks" as fuses.

Drugs found on defendant in the course of the search were identified as two bottles of tablets labeled Upjohns, known as Didrex, a prescription drug commonly used for diet pills, and a bottle of Talwin in liquid form, which is taken by injection and is commonly used as a painkiller and relaxer. There was also some testimony that the drugs included some Darvon.

The City, over the strenuous objection of defendant, introduced evidence to the effect that defendant was addicted to drugs, that he had been observed on specific occasions when he was apparently under the influence of drugs, that an officer had taken drugs from him in the past and had observed defendant and others in the process of injecting drugs. This evidence was presented in the City's case in chief by the testimony of a detective who testified additionally as to some of the tools found on defendant. Another detective testified exclusively on the subject of the drugs found on defendant and discussions between the witness and defendant relative to such drugs, the particular officer being assigned to narcotics. He testified that he inquired of defendant whether he had a prescription for the drugs found on him and defendant said he had one, but he was not able to tell the officer what drug store filled the prescription. The officer also testified that the defendant had requested "in a lot of different ways" that the drugs be returned to him and that the officer told him that if defendant would let him know the name of the drug store and the officer found it to be a legitimate prescription, he would return the drugs, but that the defendant never produced "a prescription or drug store or doctor, in regard to the prescribing of these particular drugs."

The City argues in its brief that evidence of defendant's prior use of drugs was admissible as tending to show a motive in him to commit burglary in order to obtain funds for the purpose of supplying him with narcotic drugs and hence that his possession of the alleged burglary tools was with the intent to steal. There seems to be no contention that he intended to steal drugs from the filling station or any other place. There was no evidence indicating that defendant had previously committed or desired to commit burglary for the purpose of obtaining drugs or the means with which to obtain drugs.

The City has presented no case that can be looked upon as a definite precedent for the admission of such evidence.

We have in mind cases referred to by appellee's counsel, as well as other cases, in which it was held that evidence that constituted an attack upon the character of a defendant would. at times be admissible

to show a motive or a criminal intent as to the crime for which he was being tried, but we feel that in such cases there was either (1) a clearer relevance or (2) less prejudicial effect, or both.

■ That such evidence may have some probative value does not in and of itself entitle it to admission. Evidence of bad character has probative value against a defendant, but the policy of the law is as stated in 22A C.J.S. Criminal Law § 676 as follows:

"As a general rule, the prosecution may not initially, in its case in chief, resort to any kind of evidence of accused's evil character, disposition, or reputation in order to establish a probability of guilt; and the good or bad character of accused is never an issue to which the state may offer evidence unless accused choose to make it an issue."

When considering whether evidence that has some probative value as to the guilt of the defendant but which constitutes an attack upon his character should be admitted in evidence, due regard should be given to the principles stated in Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168, as follows:

". . . . The state may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice."

■ We hold that the complained-of evidence was too indefinite, tenuous and speculative for the purpose of showing motive or intent to be admissible when juxtaposed to its great potency to "overpersuade" to the unjust prejudice of defendant.

In Spicer v. State, 188 Ala. 9, 26, 65 So. 972, 977, the court said:

"The motive . . . cannot be speculated upon or imagined . . . ."

Comparisons are often odious and unsatisfactory, and we do not attempt here to weigh any one vicious addiction against another, but we doubt not that slight addiction to drugs would be no less vague, tenuous and speculative as evidence of a motive for a crime than, for example, gross addiction to intoxicating liquor, and we hardly think that the latter is to be considered as admissible evidence. In using the word "addict" and its derivatives in this opinion, we do not mean, and in the use of such word by attorneys and witnesses in connection with testimony to which objection was made, we understand that they did not necessarily mean, "addict" as defined and applied to drug addicts in § 249 of the Narcotic Drugs and Poisons Act, Title 22, §§ 232–255, Code of Alabama, repealed by the Alabama Uniform Control Substances Act, Title 22, §§ 258(25)–258(60), Code of Alabama, 1971 Cumulative Pocket Part. We here consider it in its ordinary, general signification and not as a word of art or of a strictly legal definition. In its more comprehensive sense at least, addiction can be of various degrees. There was some evidence tending to show, but which fell far short of showing, superlative addiction. The learned trial judge wisely refused to allow the City to succeed in its efforts to add to the evidence admitted on the subject of drugs. We do not assay appellee's contention on this appeal as one to the effect that the magnitude of the number of times, the size of amounts or the extent of harmful influence of frequent improper use of drugs by a defend-

ant, rather than his frequent improper use thereof in and of itself, furnishes a basis for admission of the evidence. Irrespective of whether we have correctly construed appellee's contention in the respect noted, we think the evidence to which objection was made should not have been admitted.

█ We are of the opinion that the evidence of defendant's addiction to or use of drugs amounted, in effect, to an attack on his character by proof of a specific course of improper conduct, which, of course, is not permissible. 1 McElroy, Law of Evidence in Alabama, § 26.01, p. 25 (2d ed.)

Moreover, we conclude, in applying language of Judge McElroy in Relevancy of Evidence upon Mental Capacity, 4 Ala. Lawyer 384 at p. 394, quoted in Pilkington v. State, 46 Ala.App. 716, 718, 248 So.2d 755, cert. denied, 287 Ala. 739, 248 So.2d 757, that whether the evidence here in question had more than, or but "a glimmer of probative value" as tending to show intent or motive, such evidence was "likely to stimulate excessive emotion or prejudice against" defendant "and thus to dominate the mind" of the jury and "prevent a rational determination" of the question of defendant's guilt of the crime for which he was being tried. In the same article we find the following refinement of the touchstone on the subject:

"Sentiments, which have become almost second nature, keep the ministers of the law aware that the preservation of these rules restricting the use of the accused's bad character against him, are essential for the purpose of avoiding Undue Prejudice to the accused."

We are of the opinion that error to the substantial injury of defendant was committed in admitting, over the objections of defendant, evidence as to his prior use, addiction to, and connection with drugs and that the judgment should be reversed and the case remanded for another trial.

The foregoing opinion was prepared by Honorable Leigh M. Clark, Supernumerary Circuit Judge, serving as a Judge of this Court under § 2 of Act No. 288, Acts of Alabama, July 7, 1945, as amended; his opinion is hereby adopted as that of the Court.

Reversed and remanded.

CATES, P. J., and TYSON, HARRIS and DeCARLO, JJ., concur.