513 So.2d 40 (1987)
Earnest L. ARRINGTON
v.
STATE.
1 Div. 152.
Court of Criminal Appeals of Alabama.
January 13, 1987.
Rehearing Denied May 12, 1987.
Certiorari Denied August 28, 1987.
*41 Barbara A. Brown, Mobile, for appellant.
Charles A. Graddick, Atty. Gen., and Fred F. Bell, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 86-1116.
LEIGH M. CLARK, Retired Circuit Judge.
This is an appeal from a judgment of conviction and sentence on a jury trial on an indictment that charged in pertinent part the following:
"EARNEST LEE ARRINGTON, did in the course of committing a theft of lawful currency of the United States of America, the specific denomination(s) of said currency being unknown to the Grand Jury, of the approximate aggregate value of one thousand two hundred dollars ($1,200.00), the property of Weichman's All Season Restaurant, use or threaten the imminent use of force against the person of Glennon Bosarge, with intent to overcome his physical resistance or physical power of resistance, while the said EARNEST LEE ARRINGTON was armed with a deadly weapon or dangerous instrument, to-wit: a gun, in violation of § 13A-8-41 of the Code of Alabama."
The defendant-appellant was sentenced to imprisonment for life.
We now consider the six issues of appellant in the order presented in the brief of counsel for appellant.

I.
By this issue, counsel for appellant contends that "The trial court erred in denying the defendant Youthful Offender Status" as now provided by Section 15-19-1, Code of Alabama 1975. Said counsel for appellant, who was appointed by the trial court to represent appellant on appeal and who was not his attorney on the trial, has made a strong and almost convincing argument that defendant was denied Youthful Offender status because of the nature of the crime charged. She concludes her argument as to Issue I as follows:
"There is nothing in the record to establish that the denial of youthful offender treatment was not based solely on the nature of the crime charged, i.e., robbery first degree.
"For the above-stated reasons and in accord with the above-stated law, appellant contends that the trial court erred in denying him Youthful Offender Treatment."
Counsel for appellee has responded in the brief for appellee by what was held by this Court in an opinion by Presiding Judge Bowen in Garrett v. State, 440 So.2d 1151, 1152 (Ala.Cr.App.1983), cert. denied, Ala. (1983) as follows:
*42 "The defendant's application for treatment as a youthful offender (Alabama Code Section 15-19-1 (1975)) was not denied solely because of the nature of the offense. The record does show that the trial judge stated that he would `not give the reason (for his ruling) because of the nature of the offense.' The record reflects that the trial judge ordered an investigation by the pardon and probation officers of Walker County `for the purpose of determining whether the defendant should be tried and sentenced as a Youthful Offender.' The judge's order denying youthful offender treatment reflects that the court conducted a hearing and heard evidence `as presented in support of said application.'
"Summarizing what we said in Morgan v. State, 363 So.2d 1013, 1015 (Ala.Cr. App.1978), the Youthful Offender Act, does not require a formal hearing or investigation and the trial judge is not required to state his reason for denying youthful offender status. Here, it does not affirmatively appear that the decision of the trial judge was arbitrary or made without some examination or investigation. The record provides no basis for overturning the denial of the defendant's request for youthful offender status. Carthon v. State, 419 So.2d 293, 295 (Ala.Cr.App.1982)."
In accordance with the law as we have just quoted from Garrett v. State, supra, we decide appellant's first issue adversely to appellant.

II.
By this issue, counsel for appellant states, "The trial court erred in allowing a state witness to testify as to defendant's character" and cites as authority therefor, Christian v. City of Tuscaloosa, 53 Ala. App. 81, 297 So.2d 405 (Ala.Cr.App.1974). Counsel for appellant quotes to a great extent what was held by this Court in Christian v. City of Tuscaloosa, and we quote therefrom at 53 Ala.App. 85, 297 So.2d 408:
"That such evidence may have some probative value does not in and of itself entitle it to admission. Evidence of bad character has probative value against a defendant, but the policy of the law is as stated in 22A C.J.S. Criminal Law § 676 as follows:
"`As a general rule, the prosecution may not initially, in its case in chief, resort to any kind of evidence of accused's evil character, disposition, or reputation in order to establish a probability of guilt; and the good or bad character of accused is never an issue to which the state may offer evidence unless the accused chooses to make it an issue.'
"When considering whether evidence that has some probative value as to the guilt of the defendant but which constitutes an attack upon his character should be admitted into evidence, due regard should be given to the principles stated in Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 as follows:
"`.... The State may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such character might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is a practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice.'
"We hold that the complained-of-evidence was too indefinite, tenuous and speculative for the purpose of showing motive or intent to be admissible when juxtaposed to its great potency to `overpersuade' to the unjust prejudice of defendant."
We do not believe that Christian v. City of Tuscaloosa supports the position of counsel for appellant in the instant case as to *43 the issue now under consideration. We now quote from that part of the direct examination of Joseph Dion Nixon, who identified the defendant as the robber with the shotgun who took part in the robbery alleged in the indictment:
"Okay. Now, Dion, have you ever seen this defendant up by Harmon Rec Center before?
"A. Yes, sir.
"Q. So, when you saw him that night at Weichman's Restaurant, that wasn't the first time you've ever seen him, is it?
"A. No, sir. It wasn't.
"Q. You'd seen him before?
"A. Yes, sir.
"Q. You'd see him around the neighborhood?
"A. Yes, sir.
"Q. And this is the neighborhood kid pulling shotguns on you, is that right?
"A. Yes, sir.
"MR. JORDAN [Defendant's attorney]: (Interposing:) I object to that, Judge. It's improper
"THE COURT: Overruled."
We agree with the response made in brief of counsel for appellee, which is:
"... the question did not call for an answer which would interject Appellant's character. The record does not support Appellant's argument. The answer was an answer which went to further identify appellant as a person in the neighborhood.
. . . . .
"In the case at bar, no evidence that Appellant usually or habitually carried or pulled a gun on other persons was offered into evidence.... Assertions in brief of Appellant which are not supported by the record are not reviewable.
"Consequently, there is no error."

III.
Issue III is thus captioned in brief of counsel for appellant:
"THE TRIAL COURT ERRED IN ADMITTING THE SAWED-OFF SHOTGUN AND THE SHELL (STATE'S EXHIBIT NUMBERS 1 AND 2) INTO EVIDENCE IN THAT THE STATE FAILED TO PROVE A PROPER CHAIN OF CUSTODY."
In the argument in support of Issue III in brief of counsel for appellant is the following:
"As a general rule, the establishment of a chain of custody is needed to show a reasonable probability that the evidence had not been tampered with. Smith v. State, 446 So.2d 68 (Ala.Cr.App.1984). In the instant case, Officer Leeth testified that he picked the loaded weapon up from the hallway, secured it in his possession until he took it to his vehicle where he locked it in his trunk. (R-22). He had previously identified the weapon as the same one he had collected from the hallway and that he took it to the lab for an examination when he scratched the police case number and his initials on it. (R-21, 22). Over defense counsel's objection that there had been no proper predicate laid, the Court admitted the shotgun and a shell into evidence. (R-23). On cross-examination, Officer Leeth admitted that he turned the weapon over to the State Department of Forensic Sciences for examination that he believed Dale Carter signed for it but he didn't have the receipt with him. (R-25). Leeth said he had no personal knowledge of what happened to the gun after he gave it to Dale Carter and that Carter did not give the gun back to him until approximately two to three weeks later. (R-25). Dale Carter did not testify at the trial. Thus appellant contends that there is a period of approximately two or three weeks during which the gun and shell are unaccounted for. Since the chain of custody is broken, appellant respectfully submits that the trial court erred in his admitting the shotgun and the shell into evidence over objection."
In our opinion, the conclusion stated in the last sentence of the argument of counsel for appellant as stated above constitutes a non sequitur. There was nothing about the particular gun or shell that required the establishment of a chain of custody to show the reasonable probability that the *44 same had not been tampered with from the time they were turned over to Dale Carter and thereafter returned by Dale Carter to Officer Leeth. The establishment of the chain of custody during that time would not have been material to the question of whether the items were the same items taken from defendant at the scene of the robbery. We are of the opinion that appellant's third issue should be decided adversely to him.

IV.
The fourth issue presented by appellant is thus stated in brief of counsel for appellant:
"THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION FOR A DIRECTED VERDICT OF ACQUITTAL AT THE CLOSE OF THE STATE'S CASE BECAUSE THE STATE FAILED TO MAKE OUT A PRIMA FACIE CASE AND FAILED TO PROVE THE ELEMENTS NECESSARY FOR A CONVICTION."
Officer Bruce Yunker of the Mobile Police Department testified before the State rested its case that he went to the Weichman's Restaurant "within a minute of the call," went "up to the front door, waited there several minutes," attempted to get in the front door, and that thereafter the following occurred:
"Q. No one came?
"A. That's correct. Other than the white male who came to the door. He couldn't unlock it.
"Q. Okay. Then what happened?
"A. Then we were advised to go to the side door. This side door here to the office.
"Q. Okay. And did you do that?
"A. Yes, we did.
"Q. When you got there, what, if anything, did you find?
"A. The Assistant Manager, Mr. Bosarge, opened the door and let us in. He was bleeding from the head and had obvious signs of assault.
"...
"Q. Officer Yunkers, after you spoke to the manager, what, if anything, did you do?
"A. We approached the door that leads into the kitchen area.
"...
"A. We were led to believe that there were still, possibly, a subject inside the building.
"Q. Okay.
"A. We approached this door [testifying from a diagram of the restaurant].
"...
"Q. Okay.
"A. So, I turned the door knob and attempted to push the door openjust slightly. And as I pushed the door open, the door was jerked open, and a black male subject was standing in front of me with a sawed-off shotgun. He was wearing a maroonone of these vest jacketsa white shirt and blue jeans. He had a bag on his head, but it was pulled up on top of his head, like this, and it just stood uplike a hat.
"Q. It looked kind of like a chef's cap?
"A. That's correct.
"Q. Okay, now where did this happen, sir?
"A. Right at the door.
"Q. Okay.
"A. When he jerked the door open, I was standing right at the door.
"Q. Well,
"A. Walked aroundWell, the assistant manager was directly behind me, and Corporal Allen was directly behind him.
"Q. Okay. What state of preparedness were you in at this point?
"A. Well, I had my gun drawn
"Q. You had your weapon drawn?
"A. I had my weapon drawn.
"Q. Okay. And you say you saw a mana black male subjectwith a sawed-off shotgun drawn?
"A. That'sIt was in a split second. He jerked the door open, and in one motion, when he realized it was us, he stuck the shotgun out

*45 "MR. JORDAN [Defendant's attorney]: Your Honor, I object to this linethis answeras being unresponsive.
"THE COURT: Overruled.
"Q. Go ahead.
"A. He stuck the shotgun out directly in my face.
"Q. How close was it? This is unloaded.
"A. This close (indicating).
"Q. Okay.
"A. And he pulled the trigger.
"Q. You heard the trigger pop?
"A. I saw the finger move, heard the trigger pop; and at the same time, I was diving for the wall.
"Q. Okay.
"A. I knocked the manager out of the way and at the same time I came up to shoot him, that's when I heard and I saw a movement behind him.
"Q. Okay. You saw a movement behind him?
"A. That's correct.
"Q. Now, Officer YunkerTake the stand, please.
"A. All right.
"(Witness resumes the stand).
"Q. Officer Yunker, did you have an opportunity to look at this black male subject?
"A. Yes, I did.
"Q. How long an opportunity did you get to see him like that?
"A. The entire thing didn't take more than a second and a half.
"Q. You are trained, though, for observation. Aren't you, Officer?
"A. Yes, I am.
"Q. That's your job. Correct?
"A. That's correct.
"Q. Officer Yunker, I ask you to look around this courtroom. I'd like to ask you to point at the man that pointed that shotgun at you.
"MR. JORDAN: Judge, for the record, we'll object.
"THE COURT: Overruled.
"A. He's sitting right there (indicating).
"MR. MARTINO: Let the record reflect he identified the defendant, Earnest Lee Arrington.
"A. He's shaved his head. It
"Q. I was just going to ask you. He used to have a little more hair?
"A. Yes, he did.
"Q. After that happened and he popped back into the office, Officer, what, if anything, did you do at that point?
"A. He shut the door, himself,
"Q. Okay.
"A. When he realized
"Q. He shut the door?
"A. Yes, he slammed the door.
"Q. Then what happened?
"A. I called on the radio immediately and advised them that there was an armed subject in the building and to surround the building. We had several cars outside at this time."
We are of the opinion that counsel for appellant is incorrect in arguing "that the witnesses' identification of him [defendant-appellant] was not reliable." The first case cited in the brief of counsel for appellant as to the issue now under consideration is that of Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), involving a claimed identification in a "showup" procedure. The identification in the instant case of defendant as one of the participants in the robbery was not an identification at a show-up procedure, but an identification by one of the officers of the defendant while he was in one of the rooms of Weichman's All Season Restaurant and while said robbery as alleged in the indictment was still taking place and the defendant-appellant was taking part in the robbery as an aider or abettor.
In our opinion, such identification of the defendant-appellant as one of the robbers meets the requirements of reliability which, according to Hobbs v. State, 401 So.2d 276 (Ala.Cr.App.1981), cited by appellant's attorney, constitutes "the linchpin of the admissibility of identification testimony."
We decide Issue IV adversely to appellant.

*46 V.
By this issue, the contention is made in brief of counsel for appellant that the trial court erred in denying defendant's motion for a new trial, which contained the following grounds:
"1. The State failed to prove a prima facie case.
"2. The verdict was contrary to the law and against the great weight of evidence."
We believe that we have stated enough in our consideration of Issue IV to show that it is our opinion that the State did not fail to prove a prima facie case. We now state that we are convinced that the verdict of the jury was not contrary to law nor against the great weight of the evidence. The trial court was not in error in overruling the motion for a new trial.

VI.
By this final issue presented in brief of counsel for appellant, it is contended that the trial court was in error "in denying the defendant's request for a presentencing investigation." Alabama Criminal Code, § 13A-5-5 provides:
"On motion of the court or written motion of either party, the court shall require a written report of a presentence investigation of a defendant convicted of a felony, and such defendant shall not be sentenced or otherwise disposed of before such report has been presented to and considered by the court."
Substantially the same provision is contained in Temporary Rule 3, Alabama Rules of Criminal Procedure.
The court reporter's transcript shows that, immediately after the jury returned its verdict in the case sub judice and jurors were polled and excused from the courtroom to return the following morning, the following occurred:

"SENTENCING
"Does the defendant have anything to present in the way of sentencing?
"MR. JORDAN: Judge, the defendant would ask for a presentence investigation.
"THE COURT: I have a youthful-offender investigation which indicates that defendant has an extensive juvenile record, which is sufficient for my purposes, so I'm not going to order a presentence investigation.
"Anything else to present?
"MR. JORDAN: No, sir, Judge.
"THE COURT: All right.
"Do you have anything to say as to whether sentence of law should not now be passed upon you?
"THE DEFENDANT: Yeah. I think they should have looked at it both ways. If I'd have ran, I still got to face them the next day.
"THE COURT: The Court sentences you to serve the term of life in the State penitentiary.
"MR. JORDAN: Judge, the defendant would give oral notice of appeal.
"THE COURT: All right. Note your oral notice of appeal. Do you want me to appoint someone else as appellate counsel?
"MR. JORDAN: Yes, sir.
"(2:42 p.m.)
"(End of proceedings.)"
It is to be noted from what we have just quoted that neither party interposed any written motion for a written report of a presentence investigation prior to the sentencing of the defendant by the court to life imprisonment. Although we think it would have been better if the trial judge had complied with the oral request of defendant's counsel to have required a written report of a presentence investigation of the defendant before he was sentenced, the trial court did not commit error prejudicial to defendant in failing to do so. We have no reason to believe that the trial court would modify its judgment of sentence if this case were remanded to the trial court for another judgment of sentence. The judgment of conviction and sentence should now be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, *47 serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur with BOWEN, P.J., concurring in result only.

ON APPLICATION FOR REHEARING
LEIGH M. CLARK, Retired Circuit Judge.
In the lengthy brief of counsel for appellant in support of the application for rehearing, we find precisely the same issues presented as were presented in brief of said counsel on original submission. We quote them as they are stated in the brief in support of the application for rehearing:
"I. The trial court erred in denying the defendant Youthful Offender Status.
"II. The trial court erred in allowing a State witness to testify as to defendant's character.
"III. The trial court erred in admitting into evidence the sawed-off shotgun and the shell because the State failed to prove a proper chain of custody.
"IV. The trial court erred in denying the defendant's motion for directed verdict of acquittal at the close of the State's case because the State failed to make a valid prima facie case and failed to prove the elements necessary for a conviction.
"V. The trial court erred in denying the defendant's motion for a new trial because the State failed to prove a prima facie case and because the verdict was contrary to the law and against the great weight of the evidence.
"VI. The trial court erred in denying the defendant's request for a pre-sentencing investigation."
In brief of counsel for appellant, references or citations are given to cases of the appellate courts of Alabama that were discussed by this Court in its opinion on original submission. No other authority is cited in appellant's brief in support of the application for rehearing.
Nothing has been presented by the application for rehearing or the brief in support thereof that would call for a difference in any of the opinion written by this Court on original submission.
OPINION EXTENDED; APPLICATION FOR REHEARING OVERRULED.
All the Judges concur.