ON RETURN TO REMAND
On original submission, this Court remanded this cause to the trial court with directions that the trial court conduct an evidentiary hearing to determine whether the appellant had been denied his constitutional right to a speedy trial.656 So.2d 394. On July 27, 1994, that hearing was conducted. The appellant was present and was represented by counsel. In addition, this Court has been supplied with the transcript of the hearing held on April 30, 1992, which was not presented to this Court on original submission.
With commendable thoroughness, the trial court entered findings of facts and conclusions of law in denying the appellant's motion to dismiss based on the alleged denial of his right to a speedy trial. Remand C.R. 17-26. That order is attached to this opinion as an appendix and is supported by the record on appeal.
For the reasons stated in the order of the trial court entered August 30, 1994, this Court holds that the appellant was not denied his right to a speedy trial.
The judgment of the circuit court is affirmed.
OPINION EXTENDED;
AFFIRMED.
All Judges concur.
ATTACHMENT
APPENDIX
State of Alabama
vs.
Leon Bishop.
In the Circuit Court of Morgan County, Alabama.
Case No. CC87-893
RETURN TO REMAND
COMES NOW the undersigned, having been instructed by the Honorable Court of *Page 399 
Criminal Appeals to enter specific and detailed written findings in accord with the Honorable Court's order of remand, and would show unto the Court the following:
1. That on July 27, 1994, at 9:00 A.M., the appellant/defendant was present open court with his attorney of record, Lindsey Mussleman Davis, for hearing on the issue of speedy trial and that the State of Alabama was represented at said hearing by J. Patrick Lamb, Assistant District Attorney.
2. That the parties were permitted to call witnesses and present arguments of counsel to the Court and said arguments and testimony were recorded by the Court's reporter.
3. That the Court hereby orders that a transcript of these proceedings be prepared and be included, together with copies of all exhibits and pleadings of counsel filed in conjunction with this hearing, as part of this Court's return to remand.
4. That the State's "Motion to Adopt Findings of the Court of Criminal Appeals to Supplement the Record and Take Judicial Notice of Appropriate Facts" was granted by the Court without objection from opposing counsel. In granting said motion the Court replaced the date of April 17, 1993, appearing in paragraph five of the State's motion with the correct date of April 19, 1993.
5. That, having taken said proceedings under advisement, the Court hereby enters the following findings of fact:
FINDINGS OF FACT
1. That appellant/defendant was arrested on the charges at bar on August 13, 1987, and was tried and convicted of sexual abuse in the first degree on April 22, 1993, a delay of five years and eight months.
2. That Ralph Slate, Esq., entered the case at bar as attorney of record on September 4, 1987, and remained as attorney of record until he withdrew on September 1, 1993.
3. That Ralph Slate, Esq., is a senior member of the Morgan County Bar Association and a lawyer in good standing with the Alabama State Bar and has practiced criminal law in this circuit since 1949.
4. That Ralph Slate, Esq., is the brother of Circuit Judge Rudolph Slate who presided over the criminal division of the Morgan County Circuit Court from the time that this case arose until April 19, 1993.
5. That Judge Rudolph Slate recused himself from this cause, defense counsel being his brother, and that said recusal caused the case to be assigned to the judge then presiding over the civil division, R.L. Hundley, who was then, and is still now, the presiding judge of the Eighth Judicial Circuit.
6. That the appellant/defendant was arraigned by Circuit Judge R.L. Hundley on January 15, 1988, and pled not guilty.
7. That, at all times during the pendency of this case, the appellant/defendant was afforded the benefit of a reasonable bail and, in fact, was not incarcerated prior to trial for any significant amount of time.
8. That the fact that the appellant/defendant was not incarcerated pending trial lowered his priority relative to other cases awaiting trial under the customs of this circuit and Rule 8, A.R.Crim.P.
9. That Judge R.L. Hundley tried his last felony case in June 1989.
10. That appellant/defendant's trial was set on the trial docket of Special Circuit Judge A. Ted Bozeman for March 30, 1992, together with a number of other cases from which Judge Rudolph Slate recused due to potential conflicts of interest with his brother's law firm.
11. That, oral motions notwithstanding, there is no evidence that the appellant/defendant filed any pre-trial motions.
12. That appellant/defendant's case was not reached for trial during the term of March 30, 1992.
13. That appellant/defendant first asserted his right to a speedy trial by motion to dismiss filed April 15, 1992, four years and eight months after arrest. *Page 400 
14. That there is now, and was during the pendency of the defendant's trial, a large case backlog in Morgan County.
15. That it is not unusual for a "non-jail priority" case to take three years to be tried in this circuit.
[CONCLUSIONS] OF LAW
LENGTH OF DELAY:
Regarding this element of the Barker v. Wingo, 407 U.S. 514,92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), analysis, it is an established principal of Alabama Law that a defendant is not denied a speedy trial merely because of the passage of time.Nichols v. State, 518 So.2d 851 (Ala.Cr.App. 1987); Wade v.State, 381 So.2d 1057 (Ala.Cr.App. 1980), cert. denied, 381 So.2d 1060 [1062] (Ala.Cr.App. [Ala.] 1980); Haywood v. State,501 So.2d 515 (Ala.Cr.App. 1986); Noe v. State, 391 So.2d 151
(Ala.Cr.App. 1980). In Barker, the U.S. Supreme Court explained that the significance of the length of delay is as follows:
 "The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors which go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case." Barker [407 U.S.], at 530 [92 S.Ct. at 2192].
This Court, however, needs to make no inquiry into the existence of presumptive prejudice. The Court of Criminal Appeals has already found presumptive prejudice in this case.Bishop v. State, [Ms. CR 92-1966, May 6, 1994] 656 So.2d 394
(Ala.Cr.App.). Additionally, the State has stipulated to the fact that the Barker threshold has been met. Therefore, the only analysis that remains for this Court, with regard to this prong of the Barker test, is to determine the amount or measure of presumptive prejudice, as this will have to be considered in the Court's balancing.
The United States Supreme Court has given us the following guidance for measuring presumptive prejudice:
 "[T]he Court must . . . consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim . . . [t]his latter enquiry is significant to the speedy trial analysis because, . . . the presumption that pretrial delay has prejudiced the accused intensifies over time." Doggett v. U.S.
[505 U.S. 647, 652-53], 112 S.Ct. 2686, 2691
[120 L.Ed.2d 520] (1992).
Presumptive prejudice begins at the point at which ordinary prejudice, that which results from a case being prosecuted with "customary promptness," ends. Doggett [at 652, 112 S.Ct.] at 2690. In determining what constitutes customary promptness, the Court is aware that, during the pendency of this case, the Alabama Supreme Court made effective, on October 1, 1990, standards relating to delay and case management which established a goal of adjudicating felony cases within a year.
While the time standards mentioned above are only goals and do not secure any substantive rights for the defendant, they do indicate to this Court that, even under the best scenario, a delay of a year would probably never be enough alone to cause presumptive prejudice to attach.
The backlog of criminal cases in this county severely reduces the speed with which a non-jail priority case can be tried. The testimony of Faye Legg of the Circuit Clerk's office and Paul Matthews of the District Attorney's office indicates that it is not unusual at all for a felony case which is not a jail priority to take three years to be tried in this circuit. It is, therefore, the conclusion of this Court that a presumption of prejudice based upon the passage of time alone could not have attached until the three year mark was reached, given the caseload in this county.
The Court, therefore, finds that presumptive prejudice exists in this case for a period of two years and eight months. The Court will address the effects of this prejudiceinfra. *Page 401 
REASONS FOR DELAY:
The evidence presented at hearing indicates that the delay of this case resulted from the following reasons:
1. Morgan County Circuit Court had a large backlog.
2. Judge Slate recused from the case, as he was required to do by law, and the case was assigned to the docket of Presiding Judge R.H. Hundley who arraigned the defendant on January 15, 1988, but stopped trying felony cases sometime in June of 1989, before this case was reached.
3. That Presiding Judge R.L. Hundley assigned this case to the docket of Special Circuit Judge A. Ted Bozeman, a visiting judge, where it remained until Judge Bozeman could reach the case on his visits to Morgan County.
The Court acknowledges the law "places the primary burden on the courts and the prosecutors to assure that cases are brought to trial." Barker [407 U.S.], at 529 [92 S.Ct. at 2191]. However, there is no evidence whatsoever that the prosecution failed to honor its obligations under Rule 8.2, A.R.Crim.P. There was no evidence presented at hearing that would indicate that the prosecution was responsible for deliberate or purposeful delays. There is no evidence in the court file that would indicate the State ever requested a continuance or engaged in any delaying tactics. In fact, once the case was docketed for Judge Bozeman in March 1992, the case appears to have proceeded to trial in a timely fashion, considering the other cases pending and the relevant availability of Judge Bozeman. The Supreme Court instructs us in Barker:
 "A deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the government. A more neutral reason such as negligence or over-crowded courts should be weighed less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay." Barker, at 531 [92 S.Ct. at 2192].
Testimony given at hearing by an employee of the Circuit Clerk's office and the Chief Assistant District Attorney indicates that the backlog of non-jail priority cases was so great, at the time that this case was pending, that three years would not have been an unusual delay. The Court takes judicial notice of the large backlog existing at that time and notes that, while backlog delays weigh against the State, they certainly do not weigh heavily because they are not purposeful or negligent delays.
This Court cannot explain why this case was not docketed for trial between arraignment in January 1988 and March 1992. The appearances are that there was no judge available or willing to hear the case during this period of time. This Court can only speculate as to such matters; however, the Court does acknowledge that Judge R.L. Hundley was diagnosed with cancer during this period and was undergoing radiation therapy. Whether this factor accounts for any delay, this Court does not know. The State's subsequent conduct in this case and the State's desire to try the case while the victim was still young and had "jury appeal" tends to cut against any argument that the State was negligent in pursuing this matter. Nevertheless, delays that are endemic to the system appear to be weighed against the State regardless of whether or not culpability actually exist. Id. It is the opinion of this Court that, under these circumstances, the failure of this case to be docketed should not be weighed heavily against the State.
ASSERTION OF THE RIGHT:
This Court wishes to make clear from the outset that it expressly rejects the "demand waiver doctrine" and that it recognizes that a fundamental right such as a defendant's right to a speedy trial cannot be waived merely by inaction. A waiver of such a right must be knowingly and voluntarily entered into. In the Barker decision the Supreme Court states, "[w]e emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." Barker, at 532 [92 S.Ct. at 2193]. This is so because, even though a defendant is not required *Page 402 
to prosecute his own case, the right to a speedy trial may be waived, and, thus, the question of whether or not a defendant wanted a speedy trial becomes essential to the analysis. Indeed, the Supreme Court went on to state:
 "[B]arring extraordinary circumstances, we would be reluctant indeed to rule that a defendant was denied this constitutional right on a record that strongly indicates . . . that the defendant did not want a speedy trial." Barker, at 536 [92 S.Ct. at 2195].
Where the defendant has not demanded a speedy trial until very late in the process, serious questions as to the credibility of any claim that he wanted a speedy trial are raised.
In the case at bar, the defendant did not, within the guidelines set forth in Rule 15.3, A.R.Crim.P., file a timely pre-trial motion requesting a speedy disposition of his case. In fact, he first raised the issue in his motion to dismiss, which was filed on April 15, 1992, four years and eight months after his initial arrest. The Honorable Court of Criminal Appeals has already made the finding that "This assertion was tardy and weighs against the appellant's contention that his right to speedy trial was violated." Bishop v. State, [Ms. CR 92-1966, May 6, 1994] 656 So.2d 394 (Ala.Crim.App.). The fact that the defendant was represented by competent and experienced counsel throughout this four-year-and-eight-month period casts serious doubts on the credibility of any claim that the defendant wanted a speedy trial or that he was ignorant of the need to assert his right. Given that the defendant was represented by competent and learned counsel, the Court assumes that the defendant was fully aware of his rights, and it would appear, in the absence of any evidence to the contrary, that the defendant and his attorney, as a part of their trial strategy, opted to sit on those rights, presumably because the defendant derived some benefit by so doing. The Court notes that the role of counsel was considered heavily by the Supreme court in the Barker case. See Barker, at 534 [92 S.Ct. at 2194]. Considering that the defendant was facing the possibility of lengthy incarceration for a sexual offense (which usually carries more restrictive terms of confinement than other offenses) and that he was out on bail and, further, that the victim was a child whose "jury appeal" and memory were likely to diminish as time went on, it is certainly rational to conclude that counsel and defendant would choose to take no action which would hasten the trial date.
This Court believes that when all the facts and circumstances are considered together that they point to the conclusion that, if the defendant wanted a speedy trial at all, it was not until after his case was continued off the March 30, 1992, docket.
PREJUDICE:
The Court, in its discussion above regarding the length of delay, determined that there is no dispute that presumptive prejudice exists in this case. However, the mere existence of presumptive prejudice, in and of itself, only serves to trigger the Barker analysis. In regard to presumptive prejudice, we know that:
 "While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other Barker criteria . . . it is part of the mix of relevant facts, and its importance increases with the length of delay." Doggett
[505 U.S. at 655-56, 112 S.Ct.], at 2693.
Therefore, as the Doggett case makes clear, presumptive prejudice may, over a period of time, weigh heavily enough to tip the scales in the defendant's favor, even in the absence of palpable, actual or specifically demonstrable prejudice.
This Court has determined that presumptive prejudice in this case existed for a period of two years and eight months. This is indeed a lengthy time; however, it must be weighed against the other Barker criteria. The Court, here, only reaffirms that two years and eight months of presumptive prejudice exists.
In order to determine if actual prejudice exists, the caselaw indicates that this Court should look for 1) undue and oppressive incarceration, 2) anxiety and concern stemming from public accusation and 3) limitations on *Page 403 
the defendant's ability to defend himself. See Barker v. Wingo,407 U.S. 514, 33 L.Ed.2d 101, 92 S.Ct. 2182 (1972); Smith v.Hooey, 393 U.S. 374, 21 L.Ed.2d 609 [607], 89 S.Ct. 575 (1969);U.S. v. Ewell, 383 U.S. 116, 15 L.Ed.2d 627, 86 S.Ct. 773
(1966).
In the case at bar, the defendant has been free on bond since his initial arrest; therefore, there can be no actual prejudice as a result of undue or oppressive incarceration.
In the case at bar, it is true that the defendant remained publicly accused for five years and eight months. It is also true that defendant never alleged at any point that the weight of public accusation was harming him in any way, palpable or not. In fact, the defendant sat on his right so long that it seems far more probable to conclude that he was more anxious about the possibility of being tried than of living under a "cloud of suspicion and anxiety" pending trial. Barker [407 U.S.], at 534 [92 S.Ct. at 2194].
With respect to the defendant's ability to conduct an adequate defense, the Court once again notes that the defendant was out on bond during the pendency of his trial. He had plenty of time and opportunity to consult with counsel and assist in his own defense. He and his counsel had time to interview witnesses, take statements and otherwise preserve testimony for later use. While the defendant did make the general allegation in his motion to dismiss that "memory dims with time," he never asserted any specific instances of memory loss from any of his witnesses, and this Court is aware of none. The Court would point out that "dimming memories" is a phenomenon which is not unique to defense witnesses.
The Court did hear hearsay testimony from a Mr. Arnold Childers that one, James Dotson, defendant's brother-in-law, would have testified at trial that the charges brought against the defendant were false. The Court was told that Mr. Dotson would have testified that the charges were brought by the defendant's stepson to prevent a retaliatory assault by the defendant. This potential witness died sometime after the defendant filed his motion to dismiss for lack of a speedy trial. This Court notes that its records reflect no subpoenas for this witness for the first trial date. The Court also notes that this issue was raised at trial and successfully refuted by the State. Further, there is no evidence that the defendant raised this issue on direct appeal in support of his claim that his speedy trial right was violated. This is true even though the defendant challenged the trial court's decision to allow the State to offer a rebuttal witness to refute the defendant's retaliation theory. It would appear that, at best, this witness would have only provided cumulative testimony.
Given that the defendant did present the issue at trial, despite not having subpoenaed the witness and that he did not specifically raise this issue on appeal, the Court finds no significant prejudice here.
In assessing prejudice, we must look to the advantages which might have inured to the defendant by prolonging his case: 1) he was out on bond pending trial, 2) as time passed there was a good possibility that the State's witnesses would have memory losses or become unavailable, 3) the victim was a young child who would be older when trial took place and would not appeal to the jury as much, or, being older, she might be more reluctant to testify. These possible benefits to the defendant are properly considered by the Court when it attempts to determine what, if any, prejudice the defendant did suffer as a result of the delay which was present in this case.
CONCLUSION
When all of the preceding findings of fact and law are considered together and weighed carefully, the Court believes that there is little evidence to support the defendant's claim that he was denied his right to a speedy trial.
The defendant's failure to assert his right for the first four years and eight months of this case, all the while being represented by counsel, severely damages the defendant's credibility regarding his claim to this right. The fact that the defendant asserted his right only after his case had been set for trial the first time tends to indicate that, when the *Page 404 
right was asserted, it was merely a tactical move to prevent an impending trial rather than an earnest attempt to hasten adjudication of the case.
This Court acknowledges that there was an inordinate amount of delay in this case. This Court does not know precisely why this case was not set for trial between January 15, 1988, and March 30, 1992, but, as noted above, the illness of Judge R.L. Hundley may be partially responsible. This Court does not know why the presiding judge tried no felony cases after June of 1989, but there is no evidence that the prosecution failed to pursue the case.
The Court does know that case backlog and the fact that a visiting judge was assigned the case contributed to the delays and that such delays, even though there is no culpability or negligence on the State's behalf, must be weighed against the State somewhat, and this Court does that in reaching its conclusion.
This Court is aware and considers that "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify."Doggett [505 U.S. at 655, 112 S.Ct.], at 2693. This Court has determined that two years and eight months of presumptive prejudice existed and that presumptive prejudice taken together with the other Barker factors can tip the scale in favor of the defendant. Nevertheless, all of the Barker criteria must be weighed together.
When this Court balances, it finds that very little actual prejudice exists. The real issue is whether the presumptive prejudice presented in this case is enough to tip the balance in the defendant's favor, and, in light of the facts and circumstances surrounding the defendant's tardy assertion of his right, the Court is compelled to say that defendant's speedy trial right was not violated. It is the Court's opinion that the drastic remedy of dismissal being sought in this case is not appropriate in view of the harm that the defendant actually incurred.
The Clerk is to provide copy of this order to the Court of Criminal Appeals, the District Attorney and counsel for the defendant. A transcript of the proceedings of July 27, 1994, is to be forwarded to the Court of Criminal Appeal.
DONE AND ORDERED this the 30th day of August, 1994.
 /s/ C. Bennett McRae
C. BENNETT McRAE Judge