The appellant, William Anthony Hoosier, was convicted of manslaughter, a violation of § 13A-6-3, Code of Alabama 1975. He was sentenced to 20 years' imprisonment.
The state's evidence tended to show that Vickie Mashburn left her 18-month-old son, Corey Mashburn, with the appellant, her live-in boyfriend, when she went to work. While Corey was in the sole care of the appellant, he suffered a "blunt force trauma" to the abdomen. These injuries caused the death of this 18-month-old child.
 I
The appellant contends that the circuit court erred in excluding the testimony of a psychologist, Dr. Michael McElroy, concerning the "battering parent profile." The admissibility of evidence concerning the battering parent profile has not been addressed by the Alabama courts.
The state made a motion in limine to exclude Dr. McElroy's testimony concerning the battering parent profile. The court listened to Dr. McElroy's testimony out of the presence of the jury. Dr. McElroy testified that the appellant did not fit the profile of a battering parent. The court granted the state's motion in limine and sustained the state's objection to the testimony, stating that it could "find no authority for the admission of the testimony."
For scientific testimony to be admissible it must pass the test enunciated in Frye v. United States, 293 F. 1013
(D.C. Cir. 1923):
 "Under the Frye standard, expert testimony concerning a scientific or medical principle will be admissible only when the proponent of the evidence establishes that the principle has achieved general acceptance in the scientific field to which it belongs. Adams v. State, 484 So.2d 1143 (Ala.Cr.App. 1985); Prewitt v. State, 460 So.2d 296
(Ala.Cr.App. 1984); Dyas v. United States, 376 A.2d 827 (D.C.C.A. 1977), cert. denied, 434 U.S. 973, 98 S.Ct. 529, 54 L.Ed.2d 464
(1977); McCormick on Evidence, § 13 p. 31 (2d ed. 1972)."
Hill v. State, 507 So.2d 554, 555 (Ala.Cr.App. 1986), cert. denied, 507 So.2d 558 (Ala. 1987), concerned the admissibility of evidence of the "battered wife syndrome." In his concurrence in Hill, with which the Alabama Supreme Court agreed, Judge Bowen stated that expert opinion testimony on the battered wife syndrome may be received into evidence when a proper predicate and foundation is laid. SeeEx parte Hill, 507 So.2d 558 (Ala. 1987). The expert must be qualified in the area, C. Gamble, McElroy's AlabamaEvidence, § 127.01(5) (4th ed. 1991), and the scientific principle about which the expert is testifying must be generally accepted in the scientific community.McElroy's, § 490.01.
We hold that evidence concerning the battering parent profile should be evaluated in the same manner as evidence concerning the battered wife syndrome. For evidence concerning the battering parent profile to be admissible, a proper predicate and foundation must be laid. In this case, in response to the question, "Is this a recognized profile in the scientific literature?" Dr. McElroy stated: *Page 1354 
 "Again, it is not a diagnosable entity, if you will. It is not a syndrome. It is not listed in our list of diagnostic and statistical — in our DSM3, which is our diagnostic and statistical manual. You don't have the battering parent profile. It is a profile that is devised from considerable research with numerous individuals, psychologists and psychiatrists that are working in the area of child abuse and child neglect."
From this testimony, it does not appear that the battering parent profile has presently achieved general acceptance in the scientific field to which it belongs. This is not to imply that the battering parent profile will never receive general acceptance.
The circuit court did not err in refusing to receive evidence of the battering parent profile here because "a proper predicate and foundation [was not] laid." Hill v.State, 507 So.2d at 557, (Bowen, J., concurring in the result).
 II
The appellant contends that there was insufficient evidence presented by the state for the jury to find him guilty of manslaughter. He argues that the state's evidence was entirely circumstantial and was insufficient for the jury to find him guilty beyond a reasonable doubt.
Section 13A-6-3, Code of Alabama 1975, provides, in pertinent part:
 "(a) A person commits the crime of manslaughter if:
 "(1) He recklessly causes the death of another person."
Section 13A-2-2(3), provides that:
 "A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation."
This court has stated:
 " 'In determining the sufficiency of the evidence to sustain the conviction, this court must accept as true the evidence introduced by the state, accord the state all legitimate inferences therefrom, and consider the evidence in the light most favorable to the prosecution.' Faircloth v. State, 471 So.2d 485, 489 (Ala.Cr.App. 1984), aff'd, 471 So.2d 493 (Ala. 1985)."
Morgan v. State, 589 So.2d 1315, 1317 (Ala.Cr.App. 1991).
The state's evidence tended to show that the appellant carried the 18-month-old victim into the emergency room of North Jackson Hospital in Bridgeport, Alabama, just before 2:00 a.m. on February 16, 1991. The child was dead upon arrival at the hospital. His death was caused by a "blunt force trauma to his abdomen" that ruptured his stomach. At the time of his death, the child was in the sole care of the appellant.
The appellant and Vickie Mashburn began living together in December 1990. According to Ms. Mashburn, two or three weeks after they began living together, the appellant started hitting Ms. Mashburn and yelling at Corey. Ms. Mashburn testified that the appellant made Corey nervous and that Corey did not like being around the appellant. The appellant would not allow Corey to cry.
On February 15, 1991, Ms. Mashburn had to be at work at Salem Carpet Mill at 7:00 p.m. Ms. Mashburn, Corey, and the appellant left their mobile home around 5:30 p.m. and went to cash Ms. Mashburn's paycheck. They then went to get something to eat and the appellant bought a six-pack of beer. They arrived at Salem Carpet Mill around 6:15 or 6:30 p.m. They sat in their truck and ate until Ms. Mashburn had to go to work.
After leaving Salem Carpet Mill, the appellant and Corey went to see Angie Miles, Ms. Mashburn's cousin, to pay her for babysitting Corey. Corey stayed in the truck while the appellant paid Ms. Miles.
The appellant testified in his own defense and offered a version of the facts tending to exonerate himself.
Ms. Mashburn gave permission for an autopsy to be performed on Corey and also gave Charles Phillips, chief investigator *Page 1355 
with the Jackson County Sheriff's Department, permission to search her mobile home. Angie Miles testified that the appellant had asked her to go to the mobile home and hide his beer before the police arrived.
The autopsy revealed that Corey had a 1 1/2-inch tear in his stomach and a 5/16-inch tear and a 1/2-inch tear in his large intestine. The evidence was that this type of injury, if not treated, is always fatal. The injury was caused by a "blunt force trauma to the abdomen." There was no direct evidence as to how Corey received the fatal blow to his stomach. However, Dr. Joseph Embry, the pathologist who performed the autopsy, testified that Corey died two to three hours after receiving the injury. From 7:00 p.m. on February 15 until 2:00 a.m. on February 16, Corey was in the sole care of the appellant. From the evidence, Corey received the "blunt force trauma" that caused his death during the time that he was in the appellant's sole care.
Dr. Embry and Dr. Murali Mohan both testified that Corey's injuries would have caused him extreme pain. A rupture of the stomach allows acid to be released into the abdominal cavity, producing, in essence, a chemical burn. The appellant testified that Corey never cried on the night of February 15. The jury could have inferred from this conflicting testimony that the appellant was lying.
The bed on which Corey had been sleeping that night had bloodstains on the sheets and the pillowcase. Ms. Mashburn testified that she had put clean sheets and a clean pillowcase on Corey's bed earlier in the day. There was sufficient circumstantial evidence for the jury to find the appellant guilty of manslaughter. "The test to be applied [in reviewing a conviction based on circumstantial evidence] is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude." Cumbo v.State, 368 So.2d 871, 874 (Ala.Cr.App. 1978), writ denied,368 So.2d 877 (Ala. 1979).
From the evidence, the jury could reasonably infer that the evidence "excluded every reasonable hypothesis but guilt."
 III
The appellant next argues that the circuit court erred in receiving certain photographs of the victim into evidence. He contends that the receipt of the photographs was error because they did not "truly and accurately depict the true appearance of the child and confused the jury." The photographs were taken several hours after the victim had died and after several measures to resuscitate him had been attempted. There was testimony indicating that the victim's appearance in the photographs was different than his appearance when he arrived at the hospital.
 "Photographs are admissible if they tend to prove or disprove some disputed or material issue, to illustrate or elucidate some other relevant fact or evidence, or to corroborate or disprove some other evidence offered or to be offered. Baldwin v. State, 282 Ala. 653, 213 So.2d 819 (1968). The fact that a photograph is gruesome is not grounds to exclude it as long as the photograph sheds light on issues being tried."
Ex parte Bankhead, 585 So.2d 112, 118 (Ala. 1991).
 "Photographs which depict the character and location of external wounds on the body of a deceased are admissible even though they are cumulative and based upon undisputed matters."
Magwood v. State, 494 So.2d 124, 141 (Ala.Cr.App. 1985), aff'd, 494 So.2d 154 (Ala.), cert. denied, 479 U.S. 995,107 S.Ct. 599, 93 L.Ed.2d 599 (1986).
The autopsy photographs that were received into evidence showed the external and internal wounds of the victim. The witnesses who testified concerning the photographs explained how the depiction of the victim in the photograph differed from the appearance of the victim when he arrived at the hospital. The photographs were helpful to the jury in understanding the victim's injuries. The circuit court did not *Page 1356 
err in receiving the photographs into evidence.
 IV
Last, the appellant contends that the circuit court erred in sentencing him to 20 years' imprisonment. The appellant was convicted of manslaughter, a Class B felony. § 13A-6-3, Code of Alabama 1975. Section 13A-5-6(a)(2) provides that imprisonment for a Class B felony must be "not more than 20 years or less than 2 years."
The appellant's sentence is within the range provided by statute. "When a sentence imposed by the trial court is within the minimum and maximum range provided by our statutory law, this court will not overturn the sentence unless there is clear abuse by the trial court." Fordham v. State,513 So.2d 31, 34 (Ala.Cr.App. 1986). The court did not abuse its discretion here. The circuit court did not err in sentencing the appellant to 20 years' imprisonment.
For the foregoing reasons, the judgment in this case is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.