The appellant, Darryl Pierre Wooden, was found guilty of unlawful distribution of a controlled substance. The trial court sentenced him to life imprisonment as a habitual offender and ordered him to pay $100 to the Crime Victims Compensation Fund. The court also enhanced the appellant's sentence with two additional five-year terms, pursuant to §§ 13A-12-250 and -270, Ala. Code 1975.
Evidence at trial tended to show the following: On October 27, 1994, narcotics officer Jeff Steele was working undercover investigating Dilaudid sales. As he drove down 4th Avenue North, a black male, later identified as Maurice Gregg, flagged him down. Steele told Gregg that he wanted to buy a "K4" Dilaudid pill, and Gregg instructed him to circle the block. When Steele returned, he noticed the appellant sitting on the front porch of the house that Gregg apparently had just left. Gregg told Steele to recircle the block, and Steele complied. When he returned, Gregg and the appellant approached his car, and the appellant told him to count out his money. Steele gave the appellant $40 in cash, and the appellant handed him a Dilaudid pill. Steele radioed an arrest team as he drove away, and the team arrived and arrested the appellant and Gregg. A detective found Steele's $40 in the left front pocket of the appellant's pants.
 I.
The appellant first contends that the trial court erred in denying his motion to dismiss because, he says, he was denied his right to a speedy trial. The appellant's trial began on July 7, 1999, over four and one-half years after his arrest. In Barker v. Wingo, 407 U.S. 514
(1972), the United States Supreme Court set out four factors to be *Page 457 
considered in determining whether a defendant has been deprived of the right to a speedy trial. The factors to be balanced are the following: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) prejudice to the defendant resulting from the delay.
With regard to the first factor, the appellant argues that a delay of over four years and eight months between his arrest and the date of his trial is presumptively prejudicial. However, the mere passage of time does not constitute a denial of a defendant's right to a speedy trial.Johnson v. State, 680 So.2d 1005 (Ala.Cr.App. 1996). Examination of the remaining factors is necessary.
Concerning the second factor, the appellant argues that the entire delay should be attributed to the State. Specifically, he argues that his failure to appear for trial in 1997 was due to the State's failure to transport him from jail on that occasion and that delay resulting from his case not being called because of a full docket should be attributed to the State. However, continuances that are in the discretion of the trial judge and delay occasioned by want of time to try a case do not contravene the right to a speedy trial. Baggett v. State, 229 So.2d 819
(Ala.Cr.App. 1969). Here, the record reflects that the appellant's case was reset numerous times because it was not reached for trial. In addition, the record reflects no motions for continuance or other delay requested by the State. Based on the record, the reason for the delay should not weigh against the State.
The appellant argues that the third factor, assertion of his right to a speedy trial, was established by motions and petitions he filed in May, September, and October 1998 and again in January and July 1999. However, it is undisputed that the appellant failed to assert his right from the time he was arrested on October 27, 1994, until he filed his first motion on May 26, 1998. The appellant's trial began on July 7, 1999; therefore, the appellant failed to assert his right to a speedy trial for approximately three years and seven months of the four-year-eight-month delay. Failure to assert the right makes it difficult for a defendant to establish that he was denied a speedy trial. Barker v. Wingo, supra at 532. Because the appellant was tried within 15 months of his first assertion of his right to a speedy trial, this factor should not be weigh heavily against the State.
With regard to the fourth factor, the appellant argues that he suffered actual prejudice from the delay for the following reasons: (1) He experienced a "lack of memory as to the circumstances of the alleged incident"; (2) his anxiety and concern were heightened; (3) material witness Josephine Brown died and therefore could not testify that he "was at home and had just walked out of the house at the time of the arrest"; (4) he was unable to call Maurice Gregg to testify because Gregg had been released from prison and his whereabouts were unknown when the case finally came to trial; (5) the appellant lost the opportunity to serve his sentences concurrently; and (6) the "memory of witnesses" was affected, including, specifically Detective Duldt, who was "unable to answer questions from defense counsel."
With regard to the first, fourth, and sixth claims, the appellant failed to identify any specific evidence lost because of the delay; in addition, he stated for the record that he did not need Maurice Gregg as a witness. Concerning the second claim, the appellant's professed anxiety and concern were refuted by his failure to challenge the delay for more than three years and seven *Page 458 
months. With regard to the third claim, the proffered testimony did not establish an alibi defense. Officer Steele's testimony indicated that the time between the appellant's approach and the arrest was very brief; the appellant, therefore, could have entered the house when Steele circled the block and then have "just walked out" to make the sale before the arrest. With regard to the fifth claim, the appellant admitted that he suffered from substance abuse problems when he committed the offense. There is no evidence that the trial court would have sentenced a four-time felony offender with drug and alcohol problems to concurrent sentences. The appellant therefore failed to show that he had suffered any actual prejudice from the delay.
Based on the record, the appellant did not show that he was entitled to relief according to the factors set out in Barker v. Wingo, supra. Therefore, the trial court properly denied his motion to dismiss for failure to grant a speedy trial.
 II.
The appellant's second contention is that his sentence of life imprisonment plus 10 years is cruel and unusual punishment, and violates the Eighth Amendment to the United States' Constitution. He first argues that life imprisonment plus 10 years is an unduly harsh penalty for the sale of a single Dilaudid pill. He also argues that the fact that the pill could have been legally obtained with a prescription should be a mitigating factor.
When the trial court imposes a sentence within the statutory range, this court will not review that sentence. Hoosier v. State, 612 So.2d 1352
(Ala.Cr.App. 1992). Here, the appellant was found guilty of a Class B felony after he had previously been convicted of three other felony offenses, and his sentence of life imprisonment was mandatory under § 13A-5-9(c)(2), Ala. Code 1975. The two five-year enhancements also were mandatory, pursuant to §§ 13A-12-250 and -270, Ala. Code 1975, because it was undisputed that the sale occurred within a three-mile radius of a school and within a three-mile radius of a housing project. The appellant's sentence clearly was within the statutory range.
Sentences of life imprisonment or life imprisonment without parole imposed under Habitual Felony Offenders Act do not violate the Eighth Amendment. Brooks v. State, 456 So.2d 1142 (Ala.Cr.App. 1984). Moreover, the Habitual Felony Offenders Act is not unconstitutional on the bases that it does not provide for consideration of mitigating circumstances. Holleyv. State, 397 So.2d 211 (Ala.Cr.App.), cert. denied, 397 So.2d 217 (Ala. 1981). Here, the trial court did not abuse its discretion by sentencing the appellant to life imprisonment upon his conviction of selling Dilaudid, his fourth felony offense.
The appellant also argues that, because of the five-year enhancements, he received a more severe punishment for selling one Dilaudid tablet than he would have received for manslaughter, assault in the first degree, and other similar violent offenses. However, "enhancement" means that, in addition to culpability for the underlying offense, the defendant's conduct necessarily results in a higher degree of culpability. See Exparte McCree, 554 So.2d 336 (Ala. 1988) (explaining enhancement of a sentence for use of a firearm or deadly weapon in the commission of the offense). Where there is a clearly expressed legislative intention that an enhanced punishment is authorized for specific conduct, the enhancement provision is not unconstitutional. McCullough v. State, *Page 459 451 So.2d 398 (Ala.Cr.App.), cert. denied, 451 So.2d 400 (Ala. 1984).
Sections 13A-12-250 and -270, Ala. Code 1975, state that a five-year penalty is to be imposed "[i]n addition to" any penalties for the underlying sale, if the sale occurs within a three-mile radius of a school or a housing project. It is clear from the language of the statutes that the Legislature intended to mandate enhanced punishment for drug sales within the specified areas. The sentence imposed by the trial court is, therefore, not unconstitutional.
 III.
A review of the record reveals that the mandatory penalties prescribed in § 13A-12-280, Ala. Code 1975, the Demand Reduction Assessment Act, are not included in the sentencing order that appears in the case action summary. This cause therefore must be remanded to the trial court, with instructions to take such action as necessary to impose the monetary penalties and driver's license mandated by the statute. A return should be filed with this court within 21 days of the issuance of this opinion.
REMANDED WITH INSTRUCTIONS.
Long, P.J., and Cobb, Baschab, and Fry, JJ., concur.