886 So.2d 105 (2002)
Johnny Lee DRAPER
v.
STATE of Alabama.
CR-00-2191.
Court of Criminal Appeals of Alabama.
October 25, 2002.
Opinion on Return to Remand April 25, 2003.
Rehearing Applications Denied June 13, 2003.
Certiorari Denied December 12, 2003.
*107 James E. Harris, Birmingham, for appellant.
William H. Pryor, Jr., atty. gen., and J. Thomas Leverette, asst. atty. gen., for appellee.
Certiorari Denied (as to Defendant) December 12, 2003.
Alabama Supreme Court 1021644.
SHAW, Judge.
The appellant, Johnny Lee Draper, was convicted of one count of trafficking in cocaine, a violation of § 13A-12-231(2)(a), Ala.Code 1975, one count of unlawful distribution of cocaine, a violation of § 13A-12-211, Ala.Code 1975, and two counts of failure to affix a drugs-and-controlled-substances-excise-tax stamp, violations of § 40-17A-4, Ala.Code 1975. Draper raises four issues on appeal; however, because of our disposition of this case, we need address only one issue at this time.
Draper contends that the trial court erred in denying his motion to dismiss the charges against him on the ground that he was denied his right to a speedy trial or, in the alternative, that the trial court erred in not conducting a hearing on the motion.
On February 9, 2001, approximately one month before his trial, Draper filed a motion to dismiss, alleging that he had been indicted in 1994, that the case had been continued 10 times, only once at his request, and that he had been prejudiced by the lengthy delay because, he said, he was unable to locate witnesses for his defense. Draper requested a hearing on the motion. The trial court deferred ruling on the motion until the first day of trial, April 17, 2001, at which time Draper was allowed to argue his motion to the trial court; however, no evidence was taken. After hearing Draper's argument, the trial court denied the motion, but did not issue a written order containing findings of fact.
From the record, we have constructed the following time line of dates relevant to this claim:

 November 14, 1994 An arrest warrant was issued for Draper.
 November 16, 1994 Draper filed his paperwork for release on bond.[1]
 May 5, 1995 Draper was indicted.
 July 17-18, 1995 Draper pleaded not guilty and waived arraignment. The charges
 were consolidated for trial, which was scheduled for March 4,
 1996.

*108
 December 27, 1995 Subpoenas were issued for trial on March 4, 1996.
 March 4, 1996 The trial court rescheduled the trial for September 3, 1996, without
 explanation.
 June 26, 1996 Subpoenas were issued for trial on September 3, 1996.
 September 3, 1996 The trial court rescheduled the trial for May 19, 1997, without
 explanation.
 March 7, 1997 Subpoenas were issued for trial on May 19, 1997.
 May 19, 1997 The trial court rescheduled the trial for February 2, 1998, without
 explanation.
 November 26, 1997 Subpoenas were issued for trial on February 2, 1998.
 January 28, 1998 The trial court granted a motion to continue and rescheduled the
 trial for September 21, 1998.[2]
 July 16, 1998 Subpoenas were issued for trial on September 21, 1998.
 September 21, 1998 The trial court rescheduled the trial for May 24, 1999, without
 explanation.
 March 9, 1999 Subpoenas were issued for trial on May 24, 1999.
 May 18, 1999 The trial court rescheduled the trial for February 28, 2000, without
 explanation.
 December 27, 1999 Subpoenas were issued for trial on February 28, 2000.
 February 28, 2000 The trial court rescheduled the trial for September 5, 2000, without
 explanation.
 July 17, 2000 Subpoenas were issued for trial on September 5, 2000.
 September 5, 2000 The trial court continued[3] the case to September 11, 2000, without
 explanation.
 September 11, 2000 The trial court rescheduled the trial for April 16, 2001, without
 explanation.
 February 9, 2001 Draper filed his motion to dismiss.
 February 14, 2001 The trial court deferred Draper's motion to dismiss to the trial date.
 February 20, 2001 Six subpoenas were issued for trial on April 16, 2001.
 April 3, 2001 Two subpoenas were issued for trial on April 16, 2001.

*109
 April 11, 2001 One subpoena was issued for trial on April 16, 2001.
 April 17, 2001 The trial court denied Draper's motion to dismiss, and the trial
 began.
 April 18, 2001 The jury returned guilty verdicts as to all counts.
 June 15, 2001 The trial court sentenced Draper.

"The Sixth Amendment to the United States Constitution guarantees that, `[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial....' The Alabama Constitution guarantees the same. Article I, § 6, Ala. Const. 1901 (`In all criminal prosecutions, the accused has a right to... a speedy, public trial.'). We apply the principles of Barker v. Wingo, 407 U.S. 514 (1972), to determine whether a defendant has been denied his right to a speedy trial. In Barker, the United States Supreme Court prescribed a flexible balancing test which `comports with constitutional principles [and] places the primary burden on the courts and the prosecutors to assure that cases are brought to trial.' 407 U.S. at 529.
"`A balancing test necessarily compels courts to approach speedy trials on an ad hoc basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.'
"`We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, the process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution.'
"407 U.S. at 530, 533. Each factor is to be addressed in turn, weighing `the conduct of both the prosecution and the defendant.' Id. at 530[, 92 S.Ct. 2182]."
Parris v. State, 885 So.2d 813, 823 (Ala.Crim.App.2001).
The first factor to be considered in a speedy-trial analysis is the length of the delay. See Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).
"The length of delay is measured from the date of the indictment or the date of the issuance of an arrest warrant  whichever is earlier  to the date of the trial. See, e.g., Mansel v. State, 716 So.2d 234 (Ala.Crim.App.1997). To trigger a speedy-trial analysis, the delay must be so excessive as to be `presumptively prejudicial.' Barker[ v. Wingo,] 407 U.S. [514,] 530 [(1972)]. Unless the delay is presumptively prejudicial, there is no *110 need to inquire into the other Barker factors."
Roberson v. State, 864 So.2d 379, 394 (Ala.Crim.App.2002).
In this case, Draper's right to a speedy trial was triggered on November 14, 1994, when the arrest warrant was issued. His trial did not begin until April 17, 2001. The delay from his arrest to his trial was 77 months. This Court has held that a delay of 74 months was presumptively prejudicial, see, e.g., Roberson, supra, and that a delay of 40 months was presumptively prejudicial, see, e.g., Parris, supra. The 77-month delay in this case was presumptively prejudicial and requires inquiry into the remaining Barker factors.
The next step in the speedy-trial analysis is to look at the reasons for the delay. As this Court stated in Parris:
"We must now evaluate the reasons for the 40-month delay in bringing Parris to trial. As the Barker Court stated,
"`Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.'
"Barker, 407 U.S. at 531[, 92 S.Ct. 2182] (footnote omitted).
"`Between diligent prosecution and bad-faith delay, official negligence in bringing an accused to trial occupies the middle ground. While not compelling relief in every case where bad-faith delay would make relief virtually automatic, neither is negligence automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him....
"`Barker made it clear that "different weights [are to be] assigned to different reasons" for delay. Ibid. Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun. And such is the nature of the prejudice presumed that the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows. Thus, our toleration of such negligence varies inversely with its protractedness, cf. Arizona v. Youngblood, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), and its consequent threat to the fairness of the accused's trial.'
"Doggett v. United States, 505 U.S. 647, 657-58 (1992) (bracketed language in original). See also Pierson v. State, 677 So.2d 830, 831 (Ala.Crim.App.1996) (`"[N]eutral reasons" for delay, such as a crowded court docket, do not ordinarily require a dismissal of the case based on a violation of the right to a speedy trial.'); Vincent v. State, 607 So.2d 1290, 1293 (Ala.Crim.App.1992) (`"[T]he congested trial docket was a neutral reason for the delay and should not weigh heavily against the State," ... especially in view of the fact that the appellant did not raise a complaint during that time.' (quoting Archer v. State, 643 So.2d 597, 599 (Ala.Crim.App.1991) (alteration in *111 original))); Taylor v. State, 429 So.2d 1172, 1174 (Ala.Crim.App.1983) (`Although negligence is not weighed as heavily against the State as a deliberate attempt to delay the trial in order to hamper the defense, it must nevertheless be weighed against the State "since the ultimate responsibility for such circumstances must rest with the government rather than the defendant." Barker, 407 U.S. at 531, 92 S.Ct. at 2192.' (citation omitted)).
"The trial court continued Parris's case ten times. Parris requested two of the continuances, according to the case action summary sheet; one continuance appears to have been at the request of the State. Of the seven times the trial court continued the case ex mero motu, three are without explanation in the record, and three consecutive continuances were because the trial court did not reach the case. The last time the trial court continued Parris's case, it ordered, for no reason apparent in the record, that Parris's case be removed completely from the docket until further order of the court. Parris's case remained off of the docket for one year until Parris filed a petition for a writ of mandamus with this Court, and this Court dismissed the petition without prejudice contingent upon the trial court's placing Parris's case on the docket by August 28, 2000.
"Barker v. Wingo instructs that we examine the reasons for the 40-month delay in bringing Parris to trial. From the record before us, we are unable to determine the exact reasons for some of the delays; therefore, we are unable to determine whether the reasons were neutral or whether they should be attributed to the government. For example, several continuances noted on the case action summary contain no reason for delay; several others indicate only that the case was `not reached.' Most troubling to us is that, on August 19, 1999, the trial court removed the case from the docket and directed the clerk to set the case only on a specific order of the court. This Court is unable to make an informed decision regarding the reasons for this lengthy delay without additional information from the trial court."
Parris, 885 So.2d at 823-25.
Similarly, in this case, we are unable to determine from the record the reasons for the 77-month delay in bringing Draper to trial. The record reflects that the trial in this case was reset 9 times over a 5-year period. The case action summary indicates that Draper was present on three of the occasions when the case was set for trial and then rescheduled, and Draper asserts that he was present and ready to proceed to trial on all but one of the scheduled trial dates  he concedes that the continuance granted on January 28, 1998, was the result of his own motion. From the record before us, we simply cannot determine whether the delays were occasioned by the State or by Draper himself. As a result, we cannot determine whether Draper was denied his right to a speedy trial.[4]
*112 Therefore, we must remand this case to the trial court for it to conduct an evidentiary hearing on Draper's claim that he was denied his right to a speedy trial. As this Court noted in Parris:
"We faced a similar situation in Bishop v. State, 656 So.2d 394, 397 (Ala.Crim.App.1994). In that case, we instructed the trial court as follows:
"`Under the facts of this case, this Court is unable to find that the appellant has been denied his right to a speedy trial. However, neither can we determine that he has not been denied a speedy trial. Therefore, it is the judgment of this Court that this cause be remanded to the trial court with directions that the trial court conduct an evidentiary hearing. The appellant shall have the right to be represented by counsel and the right to be present at that hearing. At the conclusion of the hearing, the trial court shall apply the four-part test of Barker v. Wingo, [407 U.S. 514, 92 S.Ct. 2182 (1972)], and enter specific and detailed written findings addressing the length of delay, the reason for the delay, the assertion of the right, and the prejudice to the appellant. The transcript of the hearing and the written findings of the trial court shall be forwarded to this Court.... On remand, should it become necessary, the trial court is authorized to grant the appellant whatever relief it deems reasonable.'
"Therefore, we remand this cause to the circuit court in order to give that court the opportunity to follow the directions we prescribed in Bishop. We refer the circuit court to the thorough remand order submitted by the circuit court in Bishop. See Bishop v. State, 656 So.2d 398, 398-404 (Ala.Crim.App.1994) (opinion on return to remand). A written return to remand order containing detailed written findings regarding the Barker factors is due to be filed with this Court within 90 days from the date of the release of this opinion. We defer resolution of the speedy trial issue, and the remaining issues, pending compliance with the directives in this opinion."
Parris, 885 So.2d at 825.
Based on the foregoing, we remand this case for the trial court to conduct an evidentiary hearing on Draper's speedy-trial claim and to issue a written order containing detailed written findings on each of the remaining three Barker factors  the reasons for the delay, Draper's assertion of the right, and the prejudice to Draper. If necessary, the court may grant Draper whatever relief it deems necessary. The return to remand shall be filed with this Court within 70 days of the date of this opinion. The return to remand shall include the trial court's written findings, a transcript of the proceedings conducted on remand, any evidence introduced at those proceedings, and anything else the trial court believes will aid this Court in reviewing this issue. We defer resolution of Draper's speedy-trial claim and pretermit discussion of Draper's remaining claims pending the trial court's return to our remand order.
REMANDED WITH DIRECTIONS.
McMILLAN, P.J., and COBB, BASCHAB, and WISE, JJ., concur.

*113 On Return to Remand

SHAW, Judge.
The appellant, Johnny Lee Draper, was convicted of one count of trafficking in cocaine, a violation of § 13A-12-231(2)(a), Ala.Code 1975, one count of unlawful distribution of cocaine, a violation of § 13A-12-211, Ala.Code 1975, and two counts of failure to affix a drugs-and-controlled-substances-excise-tax stamp, violations of § 40-17A-4, Ala.Code 1975.
In an opinion issued on October 25, 2002, this Court remanded this case for the trial court to conduct an evidentiary hearing on Draper's claim that he was denied his right to a speedy trial. See Draper v. State, 886 So.2d 105 (Ala.Crim.App.2002). We pretermitted discussion of Draper's remaining issues on appeal pending the trial court's return to our remand order. The trial court has complied with our instructions and has submitted a detailed written order with specific findings of fact regarding Draper's speedy-trial claim, which we address after a brief recitation of the facts.
The evidence adduced at trial indicated the following. In August 1994, Jesse Wells, a Birmingham police officer, was introduced to Draper by a confidential informant. As to the distribution charge, Officer Wells testified that, after initially meeting Draper, he arranged to purchase one-quarter of an ounce of powder cocaine from Draper on August 11, 1994, at 1204 15th Avenue North in Birmingham. When he arrived to make the purchase, Officer Wells said, several people were sitting outside the residence. Officer Wells asked for Draper, and Draper came out of the residence and spoke with him. According to Officer Wells, Draper told him that "the package" was not there, and that they were waiting for it to arrive. (R. 23.) Approximately 30 minutes later, Officer Wells said, a vehicle arrived at the residence and Draper went over to the car and leaned inside. He then walked to Officer Wells carrying two plastic bags  one containing powder cocaine and one containing crack cocaine. Officer Wells gave Draper $600 in currency, took the two bags of cocaine, and left the scene.
As to the trafficking charge, Officer Wells testified that, after the first transaction, he arranged to purchase approximately an ounce and a half of cocaine from Draper on August 19, 1994. As with the first transaction, Officer Wells said, when he first arrived at the residence, several people were outside. Once again, Draper told Officer Wells that "the package" had not yet arrived. (R. 31.) Officer Wells then told Draper that he had something he needed to do and to telephone him when the cocaine arrived. Officer Wells then left. Draper contacted Officer Wells approximately 30 minutes later; Officer Wells returned to the residence. This time, Officer Wells said, the cocaine was there, and he purchased two ounces of powder cocaine for $1,100 per ounce. He then left the scene.
Officer Wells positively identified Draper at trial as the person from whom he had purchased the cocaine on August 11 and August 19. In addition, both transactions were tape-recorded, and the tapes were played for the jury.
Draper called two witnesses to testify on his behalf. Both witnesses testified that they had listened to the audiotapes of the drug transactions on August 11 and August 19, 1994, and that none of the voices on the tapes belonged to Draper.

I.
In our opinion on original submission, we held that the 77-month delay between the date Draper's arrest warrant was issued *114 and the date his trial began was presumptively prejudicial and required inquiry into the remaining three Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), factors in order to determine whether Draper had been denied his right to a speedy trial. We remanded the case for the trial court to hold an evidentiary hearing and to issue specific findings of fact regarding those three factors  the reasons for the delay, Draper's assertion of his right, and the prejudice to Draper. The trial court has complied with our instructions; it held an evidentiary hearing and it issued an extensive, well-written order thoroughly addressing Draper's speedy-trial claim. After setting forth a time line of events, the trial court stated in the order, in pertinent part:
"This court does take judicial notice of the backlog of criminal cases during the period of time this defendant's case was pending and that priority was given to capital-murder cases and jail cases [[1]] in attempting to reduce a tremendous criminal docket that this court and every court was experiencing. This court takes notice that the defendant remained on bond pending trial and that because of the crowded docket a continuance of the trial for any reason would result in resetting at a much later date than this court would have preferred. The backlog of criminal cases in this county severely reduced the speed with which a non-jail priority case can be tried.
"....
"The arguments presented at the hearing along with review of the court record indicate that the delay of this case resulted from the large backlog of pending criminal cases.... There is no evidence that the State ever requested a continuance or engaged in any delaying tactics. The court finds that none of the continuances of trial in this case were precipitated by the actions of the prosecution, but were the result of a crowded court docket.
"....
"The court finds that the defendant filed his first and only request for a speedy trial by way of his motion to dismiss, which was approximately 67 days prior to the trial of this case. Where the defendant has not demanded a speedy trial until very late in the process, serious questions as to the credibility of any claim that he wanted a speedy trial are raised. The court further finds that the defendant was represented by competent counsel and does not believe that the defendant was unaware of the need to assert his right. It appears from the lack of any evidence to the contrary that the defendant and his attorney elected not to assert his right to a speedy trial because it was beneficial to him. The defendant was facing the possibility of lengthy incarceration and was out on bond pending his trial.
"....
"The State and defense acknowledge that the defendant was free on bond pending the trial of his case and presented no evidence or argument that the defendant suffered any anxiety or concern stemming from public accusation. The defendant merely asserts that he was unable to prove an alibi defense because he was not able to locate his alibi witnesses. The State has argued that the nature and quality of any alibi testimony has not been shown so as to satisfy the court of any real prejudice.

*115 "The court is aware from having tried this case that the arresting officer testified that he dealt directly with the defendant on more than one occasion and that he tape-recorded the transaction in question. The court is also aware that if the defendant was alleging that he was employed outside the county at the time of the illegal transaction, no other proof of said employment was offered at trial. The court finds that there is a lack of sufficient satisfying evidence of prejudice to the defendant.
"When all of the facts and circumstances are considered together there is very little evidence that the defendant was denied his right to a speedy trial. The defendant's failure to assert his right until he filed his motion to dismiss damages the credibility of his claim and appears more an attempt to avoid trial altogether. The requested dismissal of the charges in this case would not be appropriate considering the lack of prejudice to the defendant."
(Record on Return to Remand, C. 6-8.)
The trial court's findings are supported by the record submitted to this Court on return to remand. It appears that none of the 77-month delay was attributable to the prosecutor; rather, the delay was the result of a large backlog of cases in Jefferson County and, therefore, should not weigh heavily against the State. See, e.g., Pierson v. State, 677 So.2d 830, 831 (Ala.Crim.App.1996), and Vincent v. State, 607 So.2d 1290, 1293 (Ala.Crim.App.1992). Draper did not assert his right to a speedy trial until approximately two months before trial, over 74 months after his speedy-trial right was triggered; this weighs heavily against his claim that he was denied his right to a speedy trial. See, e.g., Wooden v. State, 822 So.2d 455 (Ala.Crim.App.2000), and Benefield v. State, 726 So.2d 286 (Ala.Crim.App.1998). Finally, we agree with the trial court that Draper failed to establish prejudice. Draper remained free on bail throughout the 77-month delay, and he has not alleged any anxiety or concern stemming from any public accusation. Draper argued at the hearing that the delay caused him prejudice because, he said, at the time of trial, he was unable to locate three witnesses who, he claimed, would have testified that he was working in Blount County at the time of the alleged drug transactions. Draper identified those witnesses only as "three farmers" and, as the trial court correctly noted, Draper provided no other evidence tending to indicate where or for whom he was employed at the time of the transactions. See Dykes v. State, 452 So.2d 1377 (Ala.Crim.App.1984).
After carefully weighing the Barker factors, we agree with the trial court that Draper was not denied his right to a speedy trial.

II.
Draper also contends that the trial court erred in allowing the State to introduce evidence during its case-in-chief of a prior crime he had committed, specifically, a 1991 conviction for possession of cocaine.
Before trial, Draper orally made a motion in limine to prevent the State from introducing evidence of his 1991 conviction for possession of cocaine, as well as the details surrounding that crime, which included the fact that when he was initially arrested on that charge in 1990, he gave a statement to police in which he admitted selling cocaine. At the hearing on the motion in limine, the State introduced into evidence a police report completed by Jimmy L. Wesson, a narcotics investigator with the Birmingham Police Department in 1990, who had arrested Draper on the possession charge. The report contained a narrative by Investigator Wesson about *116 Draper's arrest and his subsequent statement. That narrative included the following:
"Officer Wesson asked Mr. Draper what kind of work did he do? Mr. Draper stated, `Hustle.' Officer Wesson asked what do you mean you hustle? Mr. Draper stated `I sell cocaine.'"
(C. 168.) Draper argued that evidence of the prior crime and of the details surrounding that crime, including his statement to police, was inadmissible under Rule 404(b), Ala.R.Evid., because, he argued, it was irrelevant to any issue in the case. The prosecutor argued that evidence of the conviction as well as Draper's statement would be admissible pursuant to 404(b), Ala.R.Evid., to show identity if Draper's defense was that he was not the person who had sold the cocaine to the undercover officer in the present case. The trial court denied the motion in limine, without stating under what exception it was admitting the evidence.[2]
At trial, just before the State called Investigator Wesson to testify, Draper renewed his objection to the admission of any evidence of his prior crime and the details surrounding that crime. He again argued that it was irrelevant to any issue in the case, and he also argued that its prejudicial effect outweighed its probative value. The trial court overruled the objection. Investigator Wesson then testified in detail about the prior arrest, statement, and conviction. Specifically, Investigator Wesson testified that, in 1990, a confidential informant told him that Draper was selling cocaine out of the trunk of his car around the 1200 block of 15th Avenue North; the informant gave Investigator Wesson the make, model, and license tag number of the car. Investigator Wesson stated that when he and other officers arrived in the area, they saw Draper sitting in a chair outside the vehicle described by the informant, with several other people standing around. According to Investigator Wesson, the car was parked in a lot next to 1204 15th Avenue North. Investigator Wesson approached Draper and informed him that he intended to search Draper's vehicle. During the search, Investigator Wesson said, 4.24 grams of cocaine was found in the trunk. Investigator Wesson testified that Draper was arrested and taken to the police department where he was advised of his Miranda[3] rights and that Draper gave a statement. Investigator Wesson said that Draper admitted that the cocaine found in the trunk of the car was his, and Investigator Wesson read to the jury that portion of the police report quoted above. In addition, Investigator Wesson testified that Draper said that he made $1,200 a week selling cocaine.
On appeal, Draper contends that evidence of the prior crime of possession as well as the details surrounding that crime, including the statement he made in connection with his arrest, was inadmissible to prove identity because, he says, (1) identity was not yet at issue when the State presented the evidence, and (2) the prior crime and the present crimes were not similar enough for the prior crime to be relevant to identity.
Rule 404(b), Ala.R.Evid., provides, in pertinent part:

*117 "Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...."
For collateral-act evidence to be admissible for one of the "other purposes" in Rule 404(b), there must be "`a real and open issue as to one or more of those "other purposes."'" Gillespie v. State, 549 So.2d 640, 645 (Ala.Crim.App.1989), quoting Bowden v. State, 538 So.2d 1226, 1227 (Ala.1988). "Collateral-act evidence is admissible to prove identity only when the identity of the person who committed the charged offense is in issue." Ex parte Baker, 780 So.2d 677, 679 (Ala.2000).
In this case, Draper's identity was in issue when the State presented the evidence of the collateral crime. After reviewing the record, we agree with the State that, although Draper had not yet presented evidence in his defense at the time the evidence was admitted, he placed his identity in issue during the State's case-in-chief through his cross-examination of the State's witnesses. See, e.g., Brumfield v. State, 453 So.2d 1097, 1100 (Ala.Crim.App.1984)("Identity of the perpetrator is placed in issue when counsel for the defendant cross-examines a witness so as to challenge the witness's identification of the perpetrator.").
However, for collateral-act evidence to be admissible to show identity, not only must identity be in issue, but the charged crime must be committed in the same novel or peculiar manner as the previous crime. In Ex parte Baker, the Alabama Supreme Court stated:
"`Under the identity exception to the general exclusionary rule prohibiting the admission of other or collateral crimes as substantive evidence of the guilt of the accused, the prior crime is not relevant to prove identity unless both that and the now-charged crime are "signature crimes" having the accused's mark and the peculiarly distinctive modus operandi so that they may be said to be the work of the same person.' Bighames v. State, 440 So.2d 1231, 1233 (Ala.Crim.App.1983)(emphasis added [in Baker]). `[E]vidence of a prior crime is admissible only when the circumstances surrounding the prior crime and those surrounding the presently charged crime "exhibit such a great degree of similarity that anyone viewing the two offenses would naturally assume them to have been committed by the same person."' Ex parte Arthur, 472 So.2d [665,] 668 [(Ala.1985)](quoting Brewer v. State, 440 So.2d 1155, 1161 (Ala.Crim.App.1983)). See also Mason v. State, 259 Ala. 438, 66 So.2d 557 (1953); and Govan v. State, 40 Ala.App. 482, 115 So.2d 667 (1959)(recognizing that the identity exception is applicable only where both the prior crime and the charged offense were committed in the same special or peculiar manner).
"Regarding the admissibility of Rule 404(b) evidence to prove identity, the United States Court of Appeals for the Eleventh Circuit has stated that a court must determine that:
"`(1) the evidence is relevant to an issue other than defendant's character; (2) there is sufficient proof to enable a jury to find by a preponderance of the evidence that the defendant committed the extrinsic act; and (3) the evidence possesses probative value outweighing any prejudicial effect.'
"United States v. Clemons, 32 F.3d 1504, 1508 (11th Cir.1994), cert. denied, *118 514 U.S. 1086, 115 S.Ct. 1801, 131 L.Ed.2d 728 (1995). `When extrinsic offense evidence is introduced to prove identity, the likeness of the offenses is the crucial consideration. The physical similarity must be such that it marks the offenses as the handiwork of the accused.' Id. at 1508 (quoting United States v. Miller, 959 F.2d 1535, 1539 (11th Cir.1992) (quoting United States v. Beechum, 582 F.2d 898, 912 n. 15 (5th Cir.1978) (en banc))). See also United States v. Cardenas, 895 F.2d 1338, 1343 (11th Cir.1990); and C. Gamble, McElroy's Alabama Evidence § 69.01(8) (stating that a greater degree of similarity between the charged offense and the collateral act is required for admissibility to prove identity than for admissibility to prove intent or knowledge).
780 So.2d at 679-80 (footnote omitted). See also Charles W. Gamble, McElroy's Alabama Evidence, § 69.01(8) (5th ed. 1996)("[T]he identity exception to the general exclusionary rule ... contemplates the situation where the now-charged crime was committed in a novel and peculiar manner and the prosecution is allowed to show that the accused has committed other similar crimes or acts, in the same novel and peculiar manner.").
After comparing the circumstances surrounding the present crimes to the circumstances surrounding the previous crime as testified to by Investigator Wesson, we find that the circumstances are not sufficiently similar or unique for the previous crime to be admissible under the identity exception to the exclusionary rule. Although both the present crimes and the previous crime involved cocaine, both were committed at or near 1204 15th Avenue North, and both occurred when there were several people around the area, the similarities between the crimes end there. As the Alabama Supreme Court noted in Ex parte Arthur, 472 So.2d 665, 668-69 (Ala.1985), factors "common to both [crimes] ... cannot be taken out of context to stand alone for comparison .... [but] [t]he entire circumstances surrounding both [crimes] must be compared." In the present case, Draper sold cocaine to Officer Wells on two occasions in the front yard of the residence at 1204 15th Avenue North; both times, the cocaine was delivered to the residence by an unknown individual. In the previous case, Draper was found near a vehicle that had cocaine in the trunk parked in the lot next to 1204 15th Avenue North; no actual sale was involved. Moreover, neither the present crimes nor the previous crime was committed in a novel or peculiar manner. The sales of cocaine in the present case and the possession of cocaine in the previous case are not "`"signature crimes" having the accused's mark and the peculiarly distinctive modus operandi so that they may be said to be the work of the same person'" as required for admission under the identity exception to the exclusionary rule. Ex parte Baker, 780 So.2d at 679, quoting Bighames v. State, 440 So.2d 1231, 1233 (Ala.Crim.App.1983). See also Granger v. State, 473 So.2d 1137 (Ala.Crim.App.1985) (holding that evidence that appellant had sold marijuana on previous occasions was improperly admitted in trial for selling marijuana where the previous sales were not shown to be "signature crimes" with the same "modus operandi" as the now-charged crime).
The State argues, in the alternative, that evidence of the prior crime was admissible to show Draper's motive in selling cocaine in the present case. Specifically, the State argues that Draper's admission in his statement to police after his arrest for possession that he sold cocaine and that he made approximately $1,200 per week doing so was relevant to show that his motive for *119 committing the now-charged crimes was to make money.
"`[E]vidence of collateral crimes or bad acts is admissible as part of the prosecutor's case if the defendant's collateral misconduct is relevant to show his guilt other than by suggesting that he is more likely to be guilty of the charged offense because of his past misdeeds.'" Hocker v. State, 840 So.2d 197, 213 (Ala.Crim.App.2002), quoting Bush v. State, 695 So.2d 70, 85 (Ala.Crim.App.1995), aff'd, 695 So.2d 138 (Ala.1997). Rule 404(b) is a test of relevancy. Rule 401, Ala.R.Evid., defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." As this Court noted in Hayes v. State, 717 So.2d 30 (Ala.Crim.App.1997): "Alabama recognizes a liberal test of relevancy, which states that evidence is admissible `if it has any tendency to lead in logic to make the existence of the fact for which it is offered more or less probable than it would be without the evidence.'" 717 So.2d at 36, quoting C. Gamble, Gamble's Alabama Evidence § 401(b). "[A] fact is admissible against a relevancy challenge if it has any probative value, however[] slight, upon a matter in the case." Knotts v. State, 686 So.2d 431, 468 (Ala.Crim.App.1995), aff'd, 686 So.2d 486 (Ala.1996).
We agree with the State that the collateral-act evidence in this case was, under Alabama's liberal test of relevancy, relevant to show Draper's motive.
"`Motive is defined as "an inducement, or that which leads or tempts the mind to do or commit the crime charged." Spicer v. State, 188 Ala. 9, 11, 65 So. 972, 977 (1914). Motive has also been described as "that state of mind which works to `supply the reason that nudges the will and prods the mind to indulge the criminal intent.'" [Charles Gamble, Character Evidence: A Comprehensive Approach 42 (1987).]
"`Furthermore, testimony offered for the purpose of showing motive is always admissible. McClendon v. State, 243 Ala. 218, 8 So.2d 883 (1942). Accord, Donahoo v. State, 505 So.2d 1067 (Ala.Crim.App.1986). "`It is permissible in every criminal case to show that there was an influence, an inducement, operating on the accused, which may have led or tempted him to commit the offense.' McAdory v. State, 62 Ala. 154 [(1878)]." Nickerson v. State, 205 Ala. 684, 685, 88 So. 905, 907 (1921).'
"Bowden [v. State], 538 So.2d [1226,] 1235 [(Ala.1988)](emphasis in Bowden)."
Hatcher v. State, 646 So.2d 676, 679 (Ala.1994).
Although Draper's prior conviction was for possession, not distribution or trafficking, the circumstances surrounding his arrest for that possession suggest that he was also selling cocaine at the time. Draper's arrest came as a result of a tip from a confidential informant who said that Draper was selling cocaine out of his car and, after he was arrested, Draper told police that he regularly sold cocaine and that he made approximately $1,200 per week doing so. The fact that Draper had previously sold cocaine and had made large sums of money doing so tends to suggest that he would continue the sales in order to continue making large sums of money. Thus, we find that the collateral-act evidence in this case was relevant to show Draper's motive.
However, merely because the evidence was relevant to Draper's motive does not end our analysis. Rule 403, Ala.R.Evid., provides that relevant evidence "may be *120 excluded if its probative value is substantially outweighed by the danger of unfair prejudice...." As this Court stated in Averette v. State, 469 So.2d 1371 (Ala.Crim.App.1985):
"The basis for the evidentiary rule excluding evidence of the accused's commission of crimes not charged in the indictment `lies in the belief that the prejudicial effect of prior crimes will far outweigh any probative value that might be gained from them.' [C. Gamble,] McElroy's [AlabamaEvidence] at § 69.01(1) [(3d ed.1977)]. Consequently, not only must it be determined that the other offenses are material and relevant to an issue other than the character of the accused and fall within an exception to the exclusionary rule, but the probative value must not be substantially outweighed by undue prejudice.
"`Judicial inquiry does not end with a determination that the evidence of another crime is relevant and probative of a necessary element of the charged offense. It does not suffice simply to see if the evidence is capable of being fitted within an exception to the rule. Rather, a balancing test must be applied. The evidence of another similar crime must not only be relevant, it must also be reasonably necessary to the government's case, and it must be plain, clear, and conclusive, before its probative value will be held to outweigh its potential prejudicial effects.' United States v. Turquitt, 557 F.2d 464, 468-69 (5th Cir.1977) (citations omitted).
"However, it is `only when the probative value of evidence is "substantially outweighed by the danger of unfair prejudice," ... that relevant evidence should be excluded.' United States v. Bailleaux, 685 F.2d 1105, 1111 (9th Cir.1982) (emphasis in original). `[T]he probative value of the evidence of other offenses must also be balanced against its "prejudicial nature" to determine its admissibility. "Prejudicial" is used in this phrase to limit the introduction of probative evidence of prior misconduct only when it is unduly and unfairly prejudicial.' State v. Daigle, 440 So.2d 230, 235 (La.Ct.App.1983).
"`Of course, "prejudice, in this context, means more than simply damage to the opponent's cause. A party's case is always damaged by evidence that the facts are contrary to his contention; but that cannot be ground for exclusion. What is meant here is an undue tendency to move the tribunal to decide on an improper basis, commonly, though not always, an emotional one." State v. Hurd, Me., 360 A.2d 525, 527 n. 5 (1976), quoting McCormick, Handbook on the Law of Evidence § 185 at 439 n. 31 (2nd ed.1972).'
"State v. Forbes, 445 A.2d 8, 12 (Me.1982)."
469 So.2d at 1373-74.
Under the circumstances in this case, we conclude that the prejudicial effect of the collateral-act evidence outweighed its probative value. Although the circumstances surrounding Draper's prior arrest and conviction tended to suggest that his motive for selling cocaine in the present case was to make money, such a general and undifferentiated motive to make money would clearly be present in any case involving the sale of illegal narcotics. In this particular case, the evidence showed that Draper received large sums of money from Officer Wells in exchange for the cocaine; the very nature of the present crimes established that Draper's motive was to make money. Thus, the collateral-act evidence was not reasonably necessary to the State's case. Under these circumstances, *121 the probative value of the collateral-act evidence was negligible. The prejudicial effect, however, was high, given the similarities between the prior crime and the present crimes, similarities that, although not sufficient for admissibility under the identity exception, were sufficient enough, we believe, to draw the jurors minds away from the main issue  whether Draper was the person who committed the crimes in the present case. As this Court noted in Christian v. City of Tuscaloosa, 53 Ala.App. 81, 297 So.2d 405 (Ala.Crim.App.1974):
"[W]hether the evidence here in question had more than, or but `a glimmer of probative value' as tending to show intent or motive, such evidence was `likely to stimulate excessive emotion or prejudice against' defendant `and thus to dominate the mind' of the jury and `prevent a rational determination' of the question of defendant's guilt of the crime for which he was being tried."
53 Ala.App. at 86, 297 So.2d at 409. See also Dealto v. State, 677 So.2d 1236 (Ala.Crim.App.1995); Dozier v. State, 596 So.2d 49 (Ala.Crim.App.1991); and Schaut v. State, 551 So.2d 1135 (Ala.Crim.App.1989).
Under the facts in this case, we conclude that admission of the evidence of Draper's prior arrest and conviction constituted reversible error.
Based on the foregoing, Draper's convictions and sentences are reversed and this case remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
McMILLAN, P.J., and COBB and BASCHAB, JJ., concur.
WISE, J., dissents.
NOTES
[1] The record does not reflect the exact day that Draper was arrested.
[2] The January 28, 1998, entry on the case action summary states "Motion to Continue granted," but does not indicate whether the motion was made by Draper or the State. (C. 3.) No written motion to continue is contained in the record. However, Draper concedes on appeal that this motion was filed by his counsel who had a conflict with that trial date because of a prior commitment.
[3] The entry on the case action summary dated September 5, 2000, says "Hold till 9-11-00 at 9 a.m." (C. 4.)
[4] We note that the State argues that this Court "should not overturn the trial court's denial of [Draper's] motion to dismiss" because Draper's motion was not verified and no affidavits were submitted in support of the motion and, therefore, it argues, there was no evidence before the trial court to support Draper's claim that he was denied his right to a speedy trial. (State's brief at p. 18.) Although we agree with the general proposition that assertions of counsel in an unverified motion cannot be considered as evidence or proof of the facts alleged, in this case, at least one of Draper's allegations  i.e., the length of the delay in bringing Draper to trial  is apparent from the face of the record. See, e.g., Hill v. State, 675 So.2d 484 (Ala.Crim.App.1995). There was no need for Draper's counsel to "verify" or submit affidavits to establish the length of the delay, and the delay was so long as to be presumptively prejudicial and trigger an inquiry into the remaining Barker factors. However, because the trial court did not issue a written order with specific findings, we do not know whether the court considered the remaining Barker factors in denying Draper's motion to dismiss. In addition, the record does not reflect the reasons for the delay in this case; therefore, we are unable to review the propriety of the trial court's denial of Draper's motion to dismiss.
[1] Jefferson County apparently gives priority to those cases in which the accused is in jail before trial ("jail" cases), while those cases in which the accused is out on bail ("nonjail" cases) are postponed.
[2] During its oral charge, the trial court instructed the jury that it could consider the evidence of Draper's prior arrest and conviction and the circumstances surrounding the arrest and conviction only as proof of "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." (R. 136.)
[3] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).